Well, good morning and welcome to the Ninth Circuit. I'm Judge Nelson and pleased to be joined by my colleagues Judge Hawkins and Judge Collins. We would like to welcome all counsel to the court today. We ask that during arguments you please watch your time and try to keep to the allotted time frames and try to wrap up as the time is going down. You will notice that once it expires, it's going up. That does not mean your time has been extended. That means you're working off of borrowed time. We're ready to proceed with our oral argument calendar. There are no submitted cases today, so we have six cases scheduled for argument. We're ready for the first case. Okay. Thank you, Your Honor, and I will try to reserve a little time for rebuttal. Just watch your time. You'll take it all up with questions. A couple weeks ago, it took 20 minutes to address all the issues in the four related cases, so I'm going to try to focus today on only two issues. One, as to standing and Honda's burden after transunion to show specifically redressability. And then on the merits, I'm going to focus on the allegation that Honda installed a pen register in these vehicles. So first, the burden to show standing and very specifically the third prong under Lujan, redressability. Since transunion, I don't think this issue has been addressed by this court. I think it's actually an entirely novel question. Defendant removes a statutory damages class action and thereby adopts the burden to show jurisdiction. It's not the plaintiff's burden to show that we belong here. It's the defendant's burden. Does it satisfy that burden at the pleading stage if it argues in a 12B motion that the complaint fails to allege one of the legs of the Lujan standing stool? And that's a newly important question after transunion. The Supreme Court made it pretty clear that statutory damages claims with no injury alleged beyond the violation of a statute don't belong in federal court. And on top of that, decades, in fact, over a century of U.S. Supreme Court cases say that the removing defendant has the burden, even at the pleading stage, to show jurisdiction. That means Honda has to show that this is not a transunion case. Honda has to show injury, causation, and redressability. And as to that last leg, redressability, 50 years of jurisprudence since Worth v. Selden, which is cited in our briefs, that's a 1975 Supreme Court case, say that the question of redressability asks whether the statute that the plaintiff sues under gives people in his position a right to relief. Well, it can't be that the redressability issue at prong three of Article III standing is the merits and so that if you don't have a meritorious claim that it fails for redressability, I would think that the standard would be do you have a plausible claim for on the merits that would sustain redressability? And I certainly assume that you're advocating that you do have a plausible claim on the merits. No, thank you, Your Honor. I'd say two things to that. One, the standard under 12b-1 and 12b-6, this court has said, are absolutely identical. And, and the — For pleading standards, in terms of testing the adequacy of what facts need to be pleaded, that's true. But the standard for jurisdiction and redressability is non-equivalent to winning relief on the merits. Again, Your Honor, this court has said that the 12b-1 jurisdictional standard, a motion to dismiss for lack of jurisdiction and a motion to dismiss for failure to state a claim, have identical standards at the 12b stage. And so that, I think, does answer your question. That's not what this court has said. And the second — to the second point, whether or not I think I have a plausible claim at the 12b stage isn't how Honda meets its burden. The burden is shifted once the case is removed. I mean, it goes back to Belle v. Hood that for, you know, jurisdictional purposes, if the claim has tolerable merit, it's arguable. That's all that you need for — you don't actually need a meritorious claim for jurisdiction. So I just — I don't see that the merits and jurisdiction are equivalent. Well, I would say one final thing on that, and that is that Honda says that we have pled an injury under Article III as an invasion of privacy, but that the statute requires an additional level of injury. And that's an argument from Honda that we don't agree with, but from Honda that the complaint fails to allege a redressable injury because the statute doesn't give Mr. Rich or Mr. Dornet a right to relief. And so they removed — they adopted a burden to show jurisdiction, and they argued that as a legal matter, neither Mr. Rich nor Mr. Dornet is in a position where the Washington Privacy Act gives them a right to relief. Having adopted a burden to show redressability, they then argued themselves back out of federal court. Suppose we don't agree with you on the jurisdictional arguments and that the case is going to stay in federal court. What do you want us to do then? Remand for further proceedings. If the case stays in federal court, we've alleged injury causation and redressability, and that means that we've got a viable claim that should go back down to the Western District of Washington for discovery. To the merits of the WPA violation, I'll start with the installation of a pen register. The facts alleged in the complaint absolutely make out this violation. First, the infotainment system meets the statutory definition of a pen register that's in 9.73.260, a device that records or decodes electronic impulses that identify the numbers dialed on a telephone line to which such device is attached. But that's not all that's required, right? I mean, to me, and just help me walk through this if I would tell me where I'm wrong. Okay, they created this infotainment center that may record these. They don't have access to them. Even if they wanted to have access to it, they couldn't get it. A third party has access to it. So it seems to me at most you might have a claim against this third party that could have access to it, but you haven't done that. So why is somebody who doesn't even have access to the recordings liable under the statute? There is no requirement for access to the recordings under any element of the Washington Privacy Act. The violation for installing a pen register is literally that, installing a pen register. That's all the statute requires to make out a violation. The same goes for intercepting. There was previously, the statute began with opening telegrams. It's that old. It's an 1881 statute. It's been on the books since before Washington was a state. At one point, they added the violation of divulging confidential information. They took it back out. There can't be a requirement that they be able to access it or that they release it to someone else when that element was actually removed from the statute. But if you look at 9.73.260, the violation is nothing more than the installation of a pen register. And the infotainment system does record as alleged. Again, we can go back for discovery if they think it doesn't do this. It records and stores the records of all the calls made. So it decodes those electronic impulses. It identifies the numbers dialed, and it stores them. That's all there is to the statutory definition of a pen register. And the statutory violation is nothing more than installing it. It's not installing it and accessing it. It's not installing it and taking information off of it. It's simply installing it. What about the civil cause of action that's created by the statute for this chapter, which covers the pen register provision? It says that an element is that the plaintiff was injured in his or her business, his or her person, or his or her reputation. How do you satisfy that element? The Supreme Court has repeatedly said that there are only four elements to a claim, and they don't recite separate injury as one of those elements. But as to a privacy invasion— Which, the Washington Supreme Court? Yes, the Washington Supreme Court. And we've cited those cases in the briefs where they repeatedly identify only four elements to a Washington Privacy Act claim. But the plaintiffs have also alleged an invasion of privacy. And as a sort of common-law injury—and we addressed that in the briefs as well— an invasion of privacy is personal injury under the common law, and the violation of the Privacy Act is a privacy violation. So even to the extent there is additional injury to person required— and the Washington State Supreme Court hasn't said that— Do you want to reserve? I would, thank you. Unless you have another question for me, Your Honor. We'll catch you on the back. Thank you. Good morning, Your Honors. I am Eric Kazarian. May it please the Court. And I represent American Honda. With me at counsel's table is my colleague, Danielle Cerna. As Mr. Ard mentioned and as this Court knows, this case arises out of five parallel lawsuits filed against different automotive companies, each alleging alleged violations of the Washington Privacy Act. And the issues here are no different than the one that was argued on August 22nd. But fundamentally, the Article III standing issue, which is where I want to start, does not present a tough burden or hurdle in this case. It's under the precedent of this Court, but also the claims alleged here. Plaintiffs are alleging that the Washington Privacy Act codifies a substantive privacy right. And under this Court's precedent, an alleged violation of a substantive privacy right gives rise to Article III standing for concrete injury purposes. So that threshold is not a hard one to cross here. Neither is traceability, because we're here because Honda is alleged to have made a vehicle and distributed a vehicle that has alleged capabilities to record and intercept communications. So they wouldn't be here without the car. And finally, on redressability, Judge Collins, you're right. It's not that difficult here because what counsel is trying to do is confuse the merits of the claim with whether there's a potential right to relief that the Court can afford if a plausible claim is pled. And so redressability is if they allege their violation, and then they can show it the Court can offer them some relief. So redressability is not a tough standard to meet here. On the actual merits of the claim, there are five different ways you can affirm this District Court's order. But I think the simplest and cleanest way is the plain language of the statute does not prohibit the manufacturing of products. It prohibits the interception. It prohibits the recording. Nothing about manufacturing. All that Honda is alleged to have done here is manufacture a product. But if you create a device and you set it out there and it does, and you know when you set it out there that it will do what the statute forbids, and then you put it out there and it does what the statute forbids, which is record all this stuff, why is that not a violation, at least substantively, of the statute? Because there are many companies out there, Your Honor, that make devices that do the same. Your cell phones do the same thing. Computers do the same thing. All we've done is manufacture a product that somebody can then use. Well, but they might be in violation too. What about this? So you agree that the fact that Honda, as I understand it, there's no allegation that Honda has access to any of this, but you would agree that's irrelevant. That's not the argument you're relying on. You're relying on the fact that it's the manufacturer. Well, the primary argument is the manufacturing point in that the statute does not prohibit the manufacture of products. We are not agreeing that Honda itself intercepts or records. In fact, the specific allegation in the complaint is the infotainment system is what records, the infotainment system, the device is doing that. Why does it record, like, text messages? Why does it do that? Well, I think, I mean, for purpose of a 12B6 where we have to agree that it does record or is alleged to do the things it does, but we don't agree it does record, actually. What it does is it makes a copy of a previously recorded message or transmission that comes to an individual's cell phone. So the only way the infotainment system works is you connect your phone to the system, and then whatever messages are received or phone calls, it accommodates communication while you're driving. And that's because when you're driving and you want to see, okay, what was this text message I received earlier, then you can get that text message, but it has to be stored for you to retrieve it from the car, right? Correct. It has to arrive on the cell phone. The device, its infotainment system, has no independent cell signal. So the problem is when you delete it from your cell phone, you might think that it's gone, but when you plug your phone back in, you've deleted the text messages. It doesn't then update and delete from the infotainment center. That's part of the complaint as I understand it. Correct, but again, the statute speaks to recording, not copying. Is the allegation that it records everything on the device or just that it records what comes in live while it's connected? I'm not sure it's that clear, but in either way, it is not recording. It is making a duplicate of something that is stored, and again, it's copying. And a copy is not the same as recording under the Washington laws that we've cited and the cases that I've interpreted. Recording is actually kind of what you would commonly understand as recording. There's cases that say, for example, if it's something that's come onto your device and it's already been recorded on that device, the subsequent copying is not what is actionable. In fact, there's kind of an assumption. You mentioned that there's a lot of other companies that are doing this. There's no other cases that have addressed this under Washington law thus far? Because I would think Alexa would be more low-hanging fruit than the car companies in this way because they do have access to it. Now, maybe I'm caught up on the access. It sounds like I shouldn't be caught up on the access. Well, I mean, we have to start with the elements of the claim under interception and recording. And so as far as the cases that have addressed this, most of the Washington Privacy Act claims have come under the criminal statute, the criminal side of this. There are civil suits that have been brought, none against Alexa. But again, I think in the abstract, we can't decide whether Alexa is somehow a violation of the Washington Privacy Act because you have to know what's happening. Is the message coming, is it listening in either simultaneously or to a private conversation? Is there consent? There's many different layers to this. Alexa is not before us. Alexa is not before us. She listens in. She just heard what you said. Yes. But, I mean, the elements of interception are pretty clear. And an interception is when a message is coming in and before it reaches its intended recipient or simultaneously while it's reaching its intended recipient, somebody else is grabbing that transient message and preventing it from going to its intended. There's no allegation of that ever happening here. The message is sent from one cell phone to another cell phone. It's received on the cell phone. And nobody accesses it. So that's where I think the access comes in. Nobody's hearing this private communication. But it sounds like that's not actually relevant to the statutory. I don't understand how your harm ñ I mean, it's an interesting question. Is there an inherent harm by just having the information stored? I mean, maybe there is because, I mean, their point is it could be accessed later by third parties. And so just even though no one's actually accessed it, there's actually an interest in preventing the storage. Well, again, the statute doesn't prevent this copying and storage. And as far as the harm is concerned, from a statutory harm perspective, the statute is pretty clear that in addition to the actual intrusion on the seclusion that is alleged, the invasion of the privacy, which is what they're claiming is the harm, you have to allege a personal injury, a personal harm. And the case law on that is it's not that it's a simple violation of the statute is the personal harm, because if that's true, 9.73060 would be rendered superfluous. There would be no need to have a separate damages provision. The statute actually says if the following things have happened, if you've alleged sufficient facts to constitute a cause of action that are 9.73030, then you move on to 060, and then you have to show personal injury, personal harm of some sort. And the case law on that in the Washington courts ñ to show that personal harm. I mean, if Honda wereóif there were allegations that Honda installed this, they were getting the information, they were listening to it, say they were flagging it, saying, okay, we want to know everything that's said about Honda in these cars, and somehow it was able to send up all that information, would you agree that would be a violation of the statute? Well, and then there's also an issue of consent, of course. So would they have consented to that as well? But putting all that asideó Boy, I hope I'm not consenting to have every manufacturer listen to all my conversations. Well, actually, Your Honor, under the Washington case law, the consent actually comes from the knowledge that you are using a device, sending a device that recordsóin order for it to functionórecords the information. So usingóthere's case law under Townsend that saysó But I don't think that would meet the common idea of consent. If you were to ask 100 people on the street, I think you'd have maybe one that agrees that that would be consent. I'm not saying you're wrong on that. I'm just saying that's the scary world we're living in today. Well, yeah, agreed. But what we're guided by here is the Washington case law. I understand. And under the Washington case law, even text messages are consented to. But answering your specific question, I don't think it's enough to say all these things are happening because under personal harm, injury to your business or personal harm, under OMBAC, which is a Washington court case, it didn't analyze the Washington Privacy Act, what's personal harm, but it did define personal harm under the Washington statutory framework. But back to my question, if there was a suggestion that Honda really was using this information in some way, I mean, I guess the most you'd probably be willing to agree to is that it's more likely that you'd be liable under the statute. Assuming all the five different ways of, yes, but I think you would have to. You'd still have to run through the hoops. You'd have to run through all five elements, none of which would be met here. And I think that's the primary hurdle. But, again, in order to get there, I come back to my initial point, which is you have to read the statute, essentially rewrite the statute to read that it covers or makes illegal the mere manufacture of a product, which is not what it speaks to. And I think that's what they're asking this court to do in order to get through that initial threshold. So I see I'm over my time. So unless there are other questions, I respectfully ask that you please affirm the judgment below. Thank you. Thank you. We have time for rebuttal. Thank you, Your Honor. I'd like to make a couple quick rebuttals. Text messages, you do not consent to copies of your text messages by the fact that you use text messages. The cases are very clear on this. Text messages are protected under the Act. There's questions about, you know, do I consent to you showing it to him? I have to know that's going to happen, but I don't automatically consent to disclosure of text messages. I hope you're right about that. Yes. This issue of timing, they're wrong on two points. First of all, that's not what Rodin says. And second of all, we have a second plaintiff. So if I'm in my car texting, it's intercepted before the second plaintiff gets it because it gets into the car before it gets there. You have to read the complaint most favorably to my clients, and that is that it's being copied before it's being seen. He insists that copies are not recording. There's no support for that in the statute or case law. That's the common meaning of recording. You can make a recording. Copying something records it into digital memory. And so I don't think there's any support in the case law for this idea that, oh, we're only copying. I would say the same. If this, if they purged, if the system were set up to purge at the end of every day, you'd still be in with the same claim though, right? Because your position is as soon as it's copied, it's not the storage per se. It's as soon as that's uploaded and there's a digital copy made, that's a violation. Honestly, I think that would be a very, very different case. I don't think my clients would care at all, so I probably wouldn't be here. But it would be a technical violation under your theory. I'm not sure it would be. I mean, I don't think there's a case that would necessarily support. I mean, Verizon's making fleeting ephemeral copies of my text messages. I'm not sure that the Supreme Court would hold, the Washington Supreme Court would hold that. So what makes it different? It's holding onto it for a period of time? Yeah, they're copying everything off the phone, and they're storing it permanently. Well, okay. But your argument is that copying is enough, and that's why I asked the question, because you're really saying, no, it's the storage. Well, I think, I guess my position would be that it's the permanent, undeletable storage that creates the harm and the personal injury. And then, very briefly, I'd say the same thing about consent. You know, when people do not automatically consent to digital copies of digital information merely by using cell phones and text messages, the Washington Supreme Court is abundantly clear on that. We do not abandon our rights under the Washington Privacy Act simply by using modern forms of communication. So I would ask that you reverse and remand. Thank you. Thank you to both counsel for your arguments in the case. And we'll, the case is now submitted. We'll move on to the next case.
judges: HAWKINS, NELSON, COLLINS